**NOT FOR PUBLICATION**

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| ANDRE LOVE, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>FIFTH THIRD BANK, et al.,<br><br>    Defendants. | Civil Action No. 19-21215 (MAS) (DEA)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

  This matter comes before the Court upon Defendants Fifth Third Bank ("Fifth Third") and MB Financial Bank, N.A.'s ("MB Financial") (collectively, "Defendants") unopposed Motion to Dismiss Plaintiffs Andre Love and Corrine Love's (the "Loves") Complaint pursuant to Federal Rules[1] of Civil Procedure 12(b)(1) and 12(b)(6). (ECF No. 12.) The Court has carefully considered Defendants' submission and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth herein, Defendants' Motion to Dismiss is granted.

## I.   BACKGROUND

  On or about April 8, 2014, the Loves purchased property in East Brunswick, New Jersey with a mortgage. (*See* Compl. ¶¶ 7-8, ECF No. 1.) On or about January 29, 2018, the Loves refinanced the mortgage with MB Financial in the amount of $679,650. (*Id.* ¶ 8.) The Loves assert they never missed a monthly principal and interest payment for this mortgage, which collectively totaled approximately $3,400. (*Id.* ¶¶ 9-10.) According to the Loves, "[d]uring the loan term a

---

[1] All references to a "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

confusion or discrepancy existed with respect to the payment of the property taxes for the property." (*Id.* ¶ 11.) MB Financial "acknowledged this discrepancy and agreed that . . . [it] would be repaid to . . . MB Financial in equal monthly installments over a ten-year term in addition to the regular principal and interest payments" (the "Agreement"). (*Id.* ¶ 12.)

After the Loves and MB Financial entered into the Agreement, the mortgage was assigned to Fifth Third, to whom the Loves continued to make monthly principal and interest payments. (*Id.* ¶¶ 13–14.) The Loves assert they attempted to communicate with Fifth Third several times "as to how and where the additional payment [per] the . . . Agreement should be tendered[,]" but "Fifth Third . . . never confirmed the method or means[.]" (*Id.* ¶¶ 15–16.) Consequently, the Loves never made the tax discrepancy payments. (*Id.* ¶ 17.) Although, according to the Loves, their failure was due to Fifth Third's failure to cooperate, Fifth Third nonetheless claimed the Loves defaulted on the mortgage and subsequently stopped accepting their monthly payments. (*Id.*)

According to the Loves, following the alleged default, Fifth Third "in bad faith began sending statements demanding payment of over $9,000.00 per month despite the fact that historically the monthly payment was $3,400.00." (*Id.* ¶ 18.) The Loves continued to make the original $3,400 payments, but most were returned. (*Id.* ¶¶ 19–20.) Furthermore, the Loves assert that Fifth Third "in bad faith posted negative credit markers" against them, which caused substantial damage. (*Id.* ¶ 21.)

The Loves maintain that Fifth Third had knowledge of (1) the Agreement between the Loves and MB Financial; (2) the fact that the Loves never missed a monthly payment; and (3) the attempted communications from the Loves to Fifth Third about how to tender the tax discrepancy payments. (*Id.* ¶¶ 22–23.) The Loves, accordingly, contend that "[w]ith knowledge of the above[,] it was inappropriate for . . . Fifth Third to post negative credit markers." (*Id.* ¶ 24.) On December 6, 2019, the Loves filed the instant action against Defendants asserting: (1) breach of

contract, (*id.* ¶¶ 25–30), (2) fraud, (*id.* ¶¶ 31–37), (3) negligence, (*id.* ¶¶ 38–43), (4) negligent misrepresentation, (*id.* ¶¶ 44–46), (5) violation of the New Jersey Consumer Fraud Act, (*id.* ¶¶ 47–52), (6) violation of the Real Estate Settlement and Procedures Act ("RESPA"), (*id.* ¶¶ 53–55), (7) unjust enrichment, (*id.* ¶¶ 56–61), (8) promissory estoppel, (*id.* ¶¶ 62–65), and (9) "Violation of [the] Federal Banking Statute," (*id.* ¶¶ 66–68).

## II.   LEGAL STANDARD

### A.   Rule 12(b)(1)

A motion to dismiss pursuant to Rule 12(b)(1) challenges the existence of a federal court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "When subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff must bear the burden of persuasion." *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991). A motion to dismiss for lack of subject matter jurisdiction may either "attack the complaint on its face . . . [or] attack the existence of subject matter jurisdiction in fact, quite apart from any pleadings." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

A facial challenge asserts that "the complaint, on its face, does not allege sufficient grounds to establish subject matter jurisdiction." *Iwanowa v. Ford Motor Co.*, 67 F. Supp. 2d 424, 438 (D.N.J. 1999). A court considering a facial challenge construes the allegations in the complaint as true and determines whether subject matter jurisdiction exists. *Mortensen*, 549 F.2d at 891; *see also Cardio-Medical Assocs. Ltd. v. Crozer-Chester Med. Ctr.*, 721 F.2d 68, 75 (3d Cir. 1983).

A factual attack under Rule 12(b)(1) challenges the very power of a district court to hear a case, independent of the pleadings. *Mortensen*, 549 F.2d at 891. When evaluating a factual challenge, a court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* Unlike a facial analysis, no presumption of truth attaches to the plaintiff's allegations in a factual challenge and "the existence of disputed material facts will not preclude

3

the trial court from evaluating for itself the merits of jurisdictional claims." *Id.* Furthermore, in a factual challenge, the plaintiff bears the burden of establishing that jurisdiction exists. *Id.*

**B. Rule 12(b)(6)**

Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). On a motion to dismiss for failure to state a claim, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).

A district court conducts a three-part analysis when considering a motion to dismiss pursuant to Rule 12(b)(6). *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must "[review] the complaint to strike conclusory allegations[.]" *Id.* The court must accept as true all of the plaintiff's well-pleaded factual allegations and "construe the complaint in the light most favorable to the plaintiff[.]" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). In doing so, however, the court is free to ignore legal conclusions or factually unsupported accusations that merely state "the-defendant-unlawfully-harmed-me[.]" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678).

4

## III. DISCUSSION

### A. Subject Matter Jurisdiction

The Loves assert that the Court has both federal question and diversity of citizenship subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1332, respectively. (Compl. ¶¶ 4–5.) Their assertion, however, of diversity of citizenship jurisdiction is deficient on the face of the Complaint. First, the Loves fail to allege the citizenship of either Fifth Third or MB Financial, and merely provide their respective addresses.[2] (*Id.* ¶¶ 1–2.) Moreover, on the Civil Cover Sheet accompanying their Complaint, the Loves allege that Fifth Third, MB Financial, or both are incorporated or maintain their principal place of business in New Jersey. (*See* Civil Cover Sheet § 3, ECF No. 1-1.) Section 1332, however, "requires 'complete diversity,' meaning that 'no plaintiff can be a citizen of the same state as any of the defendants.'" *Johnson v. SmithKline Beecham Corp.*, 724 F.3d 337, 346 (3d Cir. 2013) (quoting *Grand Union Supermarkets of the V.I., Inc. v. H.E. Lockhart Mgmt., Inc.*, 316 F.3d 408, 410 (3d Cir. 2003)). The Court, accordingly, finds that the Loves have failed to properly allege diversity of citizenship jurisdiction over the instant matter. Federal question jurisdiction, therefore, must exist for the Loves' Complaint to survive the instant Motion to Dismiss.

### B. Federal Claims

In support of federal question jurisdiction, the Loves allege Defendants violated RESPA. (Compl. ¶¶ 53–55.) "RESPA establishes a mechanism for borrowers to obtain information from

---

[2] The Loves also fail to allege whether Defendants are nationally chartered or state banks. (*See generally* Compl.) Such information is necessary for the Court's diversity of citizenship analysis because national banks are citizens "of the State in which its main office, as set forth in its articles of association, is located." *Wachovia Bank v. Schmidt*, 546 U.S. 303, 307 (2006); *see also* 28 U.S.C. § 1348. State banks, on the other hand, are "usually chartered as corporate bodies by a particular State[ and] ordinarily fit comfortably within" Section 1332's prescription for corporate citizenship. *Id.* at 306; *see also* 28 U.S.C. § 1332(c)(1) ("[A] corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business[.]").

5


and to contest errors made by their mortgage servicers." *Schepisi v. Santander Bank, N.A.*, No. 18-15006, 2019 WL 699959, at *2 (D.N.J. Feb. 20, 2019). "To that end, the statute requires that servicers of mortgage loans respond to inquiries from borrowers regarding their loans within a set amount of time." *Heyman v. CitiMortgage, Inc.*, No. 14-1680, 2019 WL 2642655, at *35 (D.N.J. June 27, 2019) (citing 12 U.S.C. § 2605). "RESPA simply requires that, upon 'receipt' of a Qualified Written Request ('QWR'), a loan servicer must 'provide the borrower with a written explanation' that includes 'a statement of reasons for which the servicer[] believes that the account is correct.'" *Id.* (quoting 12 U.S.C. § 2605(e)(2)(B); *Hutchinson v. Del. Sav. Bank FSB*, 410 F. Supp. 2d 374, 382 (D.N.J. 2006)).

To bring a claim under RESPA, "a plaintiff must identify a violation of one of the statute's obligations and then assert either actual damages or a pattern or practice of noncompliance." *Herrera v. Cent. Loan Admin. & Reporting*, No. 17-4774, 2017 WL 4548268, at *2 (D.N.J. Oct. 12, 2017); *see also Hager v. CitiMortgage, Inc.*, No. 16-3348, 2017 WL 751422, at *4 (D.N.J. Feb. 27, 2017). "Additionally, when basing a claim on actual damages, the borrower has the responsibility to present specific evidence to establish a causal link between the financing institution's violation and their injuries." *Giordano v. MGC Mortg., Inc.*, 160 F. Supp. 3d 778, 781 (D.N.J. 2016) (internal quotation marks and citation omitted).

Here, the Loves fail to allege a specific violation of RESPA and instead merely assert in a conclusory manner that the "actions of the Defendants constitute a violation of numerous federal and state statutes/laws including but not limited to the Federal [RESPA] and other miscellaneous banking regulations." (Compl. ¶ 54.) Moreover, the Court cannot determine whether RESPA applies to the instant matter because the Loves fail to allege any facts detailing the communications made to Fifth Third regarding the Agreement. *See Hager*, 2017 WL 751422, at *5 ("[I]n order to trigger the RESPA obligations of a loan servicer," a QWR "must be written, must include

information identifying the name and account of the borrower, must either state the reasons for the belief of the borrower that the account is in error or provide sufficient detail regarding other information sought by the borrower, and must 'relat[e] to the servicing of [the borrower's] loan.'" (quoting 12 U.S.C. § 2605(e)(1)(A)-(B)); *see also Mercado v. Bank of Am., N.A.*, No. 12-1123, 2012 WL 5629749, at *6 (D.N.J. Nov. 15, 2012) (finding plaintiff's RESPA claim conclusory because "there [was] no indication that [plaintiff's] communication with Bank of America constituted a qualified written request under 12 U.S.C. § 2605(e)(1)(A)"). The Court, therefore, finds that the Loves have failed to plausibly allege a RESPA claim and, accordingly, dismisses Count Six of the Complaint.

In further support of federal question jurisdiction, the Loves allege "Violation of [the] Federal Banking Statute[.]" (Compl. ¶¶ 66–68.) The Loves, however, do not identify what statute they are seeking to invoke. Without more information, the Court will dismiss Count Nine for failure to state a claim.

### C. State Law Claims

Having dismissed the Loves' two federal causes of action, the Court "*must* decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (emphasis in original) (citations omitted). The Loves, however, have not opposed the instant Motion or provided the Court with any such considerations. The Court, therefore, will decline to exercise supplemental jurisdiction over the state law claims of the Complaint, Counts One through Five and Seven through Eight.

## IV. CONCLUSION

For the reasons set forth above, Defendants' unopposed Motion to Dismiss is granted. The Court will enter an Order to accompany this Memorandum Opinion.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE